Mr. Justice CAMPBELL
dissenting.
I dissent from the opinion and judgment of the court in this case. The opinion of the presiding judge of the Circuit Court, in my judgment, contains an exact exposition of the law of the case. Justices Catron and Grier authorize me to say they concur in this dissent, and we adopt that opinion as our opinion, which is in the following words:
This is an action for money had and received to the use of the United States, by Philip Greely, jun., the defendant’s intestate, while collector of the customs for the port of Boston and Charlestown.
A number of iterps were in question when the case was opened, but in the progress of the trial all were disposed of to the satisfaction of both parties, save a charge made by the intestate, of $17,968.92, as commissions on disbursements made by him under the orders of the Secretary of the Treasury, in the purchase of oil and other materials for light-houses. The. question is, whether the collector was entitled, by law, to make this charge against the United States for that service. Mr. Greely held the office of collector from May 1,1849, to May 1, 1858.
By the act of March 3, 1841, sec. 5, (5 Stat. at L., 432,) it was enacted, that “po collector shall, on any pretence whatever, hereafter receive, hold, or retain for himself, in the aggregate, more than six thousand dollars per year, including all commissions for duties, and all fees for storage, or fees or emoluments, or any other commissions, or salaries, which are now allowed by law.”
*477 The act of August 28, 1842, sec. 2, (5 Stat. at L., 510,) is as follows: “ That no officer in any branch of the public service, or any. other person, whose salary, pay, or emoluments, is or are fixed by law or regulations, shall receive any additional pay, extra allowance, or compensation, in any form whatever, for the disbursement of public money, or for any other service or duty whatsoever, unless the same shall be authorized by law, and the appropriation therefor explicitly set forth, that it is for such additional pay, extra allowance, or compensation.”
It "being admitted that Mr. Greely was an officer whose salary, pay, or emoluments, was or were fixed by the law, and that he had received its full amount of six thousand dollars, independent of the charge in question, it is incumbent on the defendant to show, not only that the^service was authorized. by law, but also that the appropriation for that service explicitly sets forth that it is for such additional pay, extra allowance, or conipensation. It is not enough to find an act of Congress authorizing a service, and making an appropriation to pay for it. This would be sufficient, provided the person rendering the service were not an officer, or other person,- entitled to a fixed compensation. If he be, and he claims an extra compensation for an extra service, he must produce an ap- ■ propriation which explicitly sets forth that it is made for such additional compensation-; that is, he must show not only that Congress contemplated and provided for a service, and payment therefor, but that they contemplated .and explicitly provided that if it should be rendered by one already entitled to, a fixed compensation, he should nevertheless receive, in addition thereto, the compensation provided for- such service. And the addition of such compensation to a fixed compensation is not to be inferred from any equitable considerations, but must be found explicitly declared in the law itself.
Such, in my judgment, is' the fair interpretation of the language of this act; and the history of the legislation of Congress upon this subject of the extra compensation of officers makes this interpretation, if possible, still- more plain and necessary.
The defendant relies on the following -clause in the appropriation act of March 3, 1849, (9 Stat. at L., 367:) “For super *478 intendents’ commissions, at two and one-half per cent, on the $466,980.08 appropriated above for light-house . purposes, $11,673.25. And the proviso contained in the act making appropriation for the civil and diplomatic expenses of the Government, for the year ending the 30th day of June, 1849, and for other purposes, approved, &c., which proviso is in the following, words: ‘Provided, that no part of the sum hereby appropriated shall be paid to any person who receives a salary as an officer of the customs; and from and after the 1st day of July, 1849, the said disbursement shall be made by the collectors of the customs without compensation, is herebv repealed.’ ”
The argument of the defendant’s counsel is, that the express repeal of this proviso -is equivalent to an explicit declaration that parts of the sum appropriated by this act might be paid tc persons who received salaries as officers of the customs, and that it was not to be disbursed by collectors without compensation. .
But, certainly, this appropriation does not “ explicitly set forth that it is for additional pay, extra allowance, or compensation. ” If this appears at all, it is only inferentially; and the inquiry is, whether it be a necessary inference that some part of this sum was appropriated as additional pay or . extra compensation to collectors who should perform the service of superintendents of lights.
Now, the proviso which was repealed consisted of two parts. The first related exclusively to commissions in' the disbursement of the appropriation for light-house expenses made for the fiscal year ending on the 30th day of J une, 1849and; it prohibited the payment of any commissions out of the-.sum thus appropriated, to any officer of the customs who received., a salary.
The second part of the proviso positively required' the service of making disbursements as superintendents, of lights' to be performed by collectors of customs, after July 1, -1849, without compensation. It left no discretion with*the Secretary of the Treasury to appoint any other person to discharge this duty.
*479 The repeal of the proviso, left the right of officers of the ehs-. toms to participate in the commissions for disbursing the appropriation made.for the year ending June 31,-1849, to stand upon the law as elsewhere found’; - and restored to the Secretary -of the Treasury the power to appoint persons other than collectors to make the disbursements; and if collectors should be appointed, it left their right to commissions to depend on the law as elsewhere found.
It must be admitted that this repeal might, under some circumstances, indicate an intention to have collectors participate in these commissions. If they have been for the first time ' deprived of them by the proviso, its repeal would quite clearly show that their former title was restored. But the contrary is true. Independent of the proviso, they had no title to this or any other extra compensation, and, by force of the act of August 2, 1842, could have none, unless explicitly granted by the act making the appropriation ;• so that unless I can say that the repeal of the proviso .either repeals the second section of the act of 1842, or. satisfies its requirements by an explicit appropriation to pay an extra compensation for an extra service, the defendant has no title to the commission. That the. second section 'of the act of 1842 is not repealed by implication, by the repeal of the proviso, is clear. There is no repugnance between this -repeal and the act of 1842. The reasons for repealing the entire proviso may have been that the act of 1842 was broad enough to cover the cases of extra compensation contemplated by the proviso, and so it was not necessary, in so far as its object was to provide for those cases; and in so far as it required the service to be performed by collectors only, that it was inexpedient. But to amount to a compliance with the second section of the act of 1842, it should have superadded to the repeal of the proviso, an explicit declaration that the appropriation was intended as extra compensation to those officers, having fixed salaries, who-might be selected to render the service.
There are two other views of this subject, either of which would, in my judgment, be sufficient to show that there-is no lawful claim to these commissions.-
*480 The first is, that although Mr. Greely was superintendent of lights within a certain district, extending round the Massachusetts Bay, yet these commissions are charged on disbursements made by him in the purchase, under the'orders of the Secretary of the Treasury, of oil and some other materials for the whole light-house service of the United States. Now, the appropriation made is for “ superintendents ’ commissions.” If he did not render this service as superintendent, but, aside from that employment, acted under the orders of the Secretary of the Treasury in making large purchases for this service, no appropriation is made for paying him. It was, no doubt, an onerous and responsible duty, imposed upon him because he happened -to be at a place favorable for making these purchases; and this may constitute a claim on the equitable consideration of Congress, especially if the imposition of this onerous duty, on him, instead of 'distributing it among all or most of .the superintendents of lights, was advantageous to the Government. But this is for the consideration of Congress. It does not enable me to say an appropriationto pay commissions by way of .extra compensation was actually made.
Besides, if the repeal of the proviso in the act of 1848 were neld to amount to an explicit declaration that collectors might participate in the commissions of superintendents, by way of extra compensation, the inquiry would still remain, To what extent may they receive such extra compensation ? And this seems to me to be answered-by the act of May 7, 1822, sec. 18, (3 Stat. at L., 696,) “That no collector, surveyor, or naval officer, shall ever receive more than four hundred dollars annually, exclusive of his compensation as collector, surveyor, or «aval officer, and the fines and forfeitures allowed by law, for any services he may perform for the United States in any other office or capacity.” In the case of Hoyt v. United States, (10 How., 141,) the Supreme Court considered this section in force, and applied it to the case of a collector who held office from March, 1838, to March, 1841, and I am not aware of its having been since repealed. It was admitted that, aside from the charge now in question, Mr. Greely had received extra compensation to the extent of four hundred dollars annually, for *481 services performed for the United States in a capacity other than that of collector. It follows, that for services performed in making these contracts and disbursements, which were not within his duties as collector, he can make no further charge.
"What has thus far been said relates exclusively to the defendant’s claims under the act of 1849. The subsequent acts are so much more unfavorable to these claims, that I do not deem it necessary to enter into a particular discussion of them. They are the acts of September 80, 1850, (9 Stat.. at L., 533,) March 3, 1851, (9 Stat. at L., 608,) and August 31, 1852, (10 Stat. at L., 86.) I have examined these acts, and am satisfied each of them deprives every collector, whose compensation exceeds twenty-five-hundred dollars, of all-participation in these commissions, though; they are required to render the service of superintendents of lights or disbursing agents in procuring supplies for them.